## BELL *et al.* v. McCOY, *Appellant.*

### Division One, December 23, 1896.

1. **Partnership**: SURVIVING PARTNER: EQUITY.  A surviving partner, while the firm accounts are unadjusted, can not properly dispose of firm property so as to secure an advantage personal to himself, without being liable to account in equity therefor to his partner's estate.

2. ————: REALTY.  Until liquidation of a partnership estate, the realty of the firm may be dealt with as any other asset of the firm, in administration of the estate.

Bell v. McCoy.

3. ——: LEASE: SURRENDER. The surrender of a lease to a firm, in consideration of a new lease to a surviving partner, does not release the latter from liability to account to the firm for the profits of the new lease, in the circumstances stated in the opinion.

4. Practice: EVIDENCE: WAIVER. Objections to the relevancy of testimony under the pleadings will be ignored on appeal when they could have been obviated by amendment, and were not first submitted to the trial court.

5. ——: DEMURRER: PARTIES. Where certain defendants are let out of a case on demurrer, and plaintiff does not appeal, the remaining defendant can not complain, at least where the former were not essential parties to the judgment reached.

6. ——: APPEAL: STATUTE. The amendment of the law in regard to appeals (Laws, 1895, p. 94) does not apply to an appeal pending at the time the amendment was enacted.

7. Appellate Practice: CROSS APPEALS: TRANSCRIPT. Where there were cross appeals, prior to the act of 1895, and one party files no transcript on appeal, he must be held to have abandoned the appeal.

*Appeal from Jasper Circuit Court.*—HOWARD GRAY, ESQ., Special Judge.

AFFIRMED.

*E. O. Brown* for appellant.

(1) The evidence did not warrant the action of the court in finding that the lease from Clark, Cochran & Phelps to J. P. McCoy and the royalties derived therefrom were partnership property, and as result thereof decreeing that the administratrix of the partnership estate of Bell & McCoy was entitled to said leasehold interest, and the rents and royalties arising therefrom. No aspect of this finding is based upon any allegation of the petition on which this case was tried. *Newhouse v. Kenton*, 79 Mo. 382; *Ross v. Ross*, 81 Mo. 84; *Reed v. Bott*, 100 Mo. 62. (2) Assuming there was a partnership at one time between Bell & McCoy, it was brought to an end by the death of Bell in December, 1889. There was no express trust here and the

law will not imply one; the parties stand upon legal rights alone. There are no fiduciary relations or obligations imposed upon the surviving. partner; he is liable to make good his legal obligations and no more. There is nothing which affects him in the character of a trust. It is a mistake to apply the term trust to the legal relation existing between a surviving partner and the estate of a deceased partner. *Chittenden v. Witbeck*, 50 Mich. 401; *Knox v. Gye*, L. R., 5 H. L. 656; *Taylor v. Hutchinson*, 25 Gratt. 536; 2 Bates on Partnership, sec. 798. (3) Death operates as a dissolution of a partnership. The law has never been otherwise. *Bank v. Tracy*, 77 Mo. 594; *Weise v. Moore*, 22 Mo. App. 530. (4) Ordinarily the heirs of a deceased partner can not maintain an action to compel the surviving partner to account. The accounting can only be brought about by the personal representatives of the deceased. Beach on Mod. Eq. Jur., sec. 877; *Valentine v. Wysor*, 123 Ind. 47; 2 Am. and Eng. Ency. Law, sec. 1277. See, also, 2 Bates on Partnership, sec. 924.

*J. T. James, McReynolds & Halliburton*, and *Theodore Lawrence* for respondent.

(1) Persons jointly conducting a mining venture are partners though there is no agreement for a partnership. *Snyder v. Burnham*, 77 Mo. 52; *Priest v. Chouteau*, 85 Mo. 398. (2) An agreement to prospect land and, in case coal or other mineral is found, the mine to be worked by the respective parties each bearing proportionate expenses and receiving proportionate share of profits, constitutes the parties thereto a mining partnership. *Henderson v. Allen*, 23 Cal. (1863) 519; *Nolan v. Lovelock*, 1 Mon. (1870) 224; *Duryea v. Burt*, 28 Cal. (1865) 569. (3) Real estate belonging to a partnership will in equity be treated like its personal funds

and distributed accordingly. and if the title stands in the name of one of the partners he will be held as a trustee of the partnership and be made to account to the other partners. *Faulds v. Yates*, 57 Ill. 416; *Godfrey v. White*, 11 Morrison's Mining Reports, 562. (4) A lease upon lands for any unexpired term of three years or more becomes real property. R. S. 1889, sec. 4916; *Guinn v. Sinclair*, 52 Mo. 327. (5) A leasehold upon real estate held for the use of a firm business is partnership property. *Carlisle v. Mulhern*, 19 Mo. 56; *Priest v. Chouteau*, 85 Mo. 398. (6) While the legal title to real estate belonging to a partnership is held in common and not in joint tenancy the beneficial interest is held in trust, each partner holding his portion in trust, until the partnership accounts are settled and the partnership debts are paid. *Willet v. Brown*, 65 Mo. 138. (7) Real estate belonging to a partnership will be treated like personal property, chargeable with the debts of the firm, and with any balance due from one partner to the other upon winding up the affairs of the partnership. *Carlisle v. Mulhern*, 19 Mo. 56; *During v. During*, 20 Mo. 174; *Holmes v. McGee*, 27 Mo. 597; *Young v. Thrasher*, 115 Mo. 222. (8) If all partnership debts have been paid and the equitable claims of partners adjusted, there is no reason why the land, though originally partnership property, should not be treated as real estate, and be subject to all the ordinary incidents of land held by tenants in common. *Holmes v. McGee*, 27 Mo. 597; *Young v. Thrasher*, 115 Mo. 222.

BARCLAY, J.—The suit is in equity for a partnership accounting and other relief. The trial court found for plaintiffs, and defendant brought the case to the supreme court for review.

The parties to the suit were at the outset as follows:

Mary C. Bell, administratrix of the estate of Isaiah A. Bell, deceased; Mary C. Bell, administratrix of the partnership estate of Bell & McCoy; Mary C. Bell, guardian of Leroy Bell and Fred Bell, minors, heirs at law of Isaiah A. Bell, deceased; Mary C. Bell, widow of Isaiah A. Bell, deceased, in her own right and Leroy Bell, *plaintiffs*, against Margeretta McCoy, administratrix of the estate of John P. McCoy, deceased; Margeretta McCoy, Mary A. Spires and Jesse Spires, her husband, Fred G. McCoy, a minor, and Nora E. McCoy, a minor, *defendants*.

The petition demanded an account to ascertain Bell's share of the partnership property of Bell & McCoy, alleged to be in possession of the estate of McCoy, and to belong to plaintiff, Mrs. Bell, as administratrix of the partnership estate.

All of the defendants, except Mrs. McCoy, as administratrix of the estate of J. P. McCoy, demurred to plaintiffs' petition on the ground that they were neither proper nor necessary parties defendant. The court sustained the demurrer, and the widow and heirs (as such) were "eliminated" from the case, leaving Mrs. McCoy, as administratrix, the sole defendant. The case proceeded to trial upon the original petition and the answer and reply, the general nature of which will sufficiently appear in the course of the opinion.

The following dates will aid to an understanding of our outline of the case:

July 28, 1888. Mining lease by Hilliard and Brewster estate to McCoy.

May 1, 1889. Transfer of half interest in the lease by McCoy to Bell.

Oct. 3, 1889. Deed of Hilliard and Brewster heirs to Murphy and Brewster.

Oct. 24, 1889.   Last named deed recorded.

Dec. 9, 1889.   Bell died.

Dec. 18, 1889.   Mrs. Bell appointed administratrix of his estate.

Jan. 15, 1890.   Quit-claim by Hilliard to Murphy and Brewster.

Feb. 20, 1890.   Deed of Murphy and Brewster to Clark & Co.

July 20, 1890.   New lease by Clark & Co. to McCoy.

Jan. 30, 1892.   Mrs. Bell qualified as administratrix of Bell & McCoy partnership estate.

May 3, 1892.   McCoy died.

May 9, 1892.   Mrs. McCoy appointed administratrix of his estate.

May 26, 1892.   This suit was begun.

At the time of the first lease above mentioned, the east half of the southeast quarter of section thirty-three, described therein, was owned by Mr. Hilliard and the estate of Mr. Brewster, deceased, in equal parts. The lease was for ten years. It was executed to McCoy by Hilliard in his own right and as administrator of the estate of Brewster, although no order of the probate court had authorized it. All parties, however, acted on it as valid. It was mentioned expressly as a subsisting term when the owners transferred the paramount freehold to Murphy & Brewster, October 3, 1889.

When McCoy sold the half interest to Bell in May, 1889, they formed a partnership to develop the mineral resources of the land. Their agreement was, in substance, that McCoy should superintend the active mining operations, purchase the necessary machinery and materials, employ and manage the required labor; keep the books; sell the product; pay all expenses, including the royalty (as provided by the lease) to the

owners, and render periodical statements to Bell, who was not expected to give personal attention to the work. McCoy was to receive a certain sum per day for his services; Bell was to furnish funds as needed to carry on the project, upon statements of account by McCoy.

The firm (under the mangement of McCoy) put up machinery of various kinds on the leased property and went forward to carry out the objects of the venture, until the death of Bell. After that event, and the appointment of Mrs. Bell as administratrix of the estate, McCoy had several interviews with her (and also with her attorney) in which he (McCoy) acknowledged the partnership relation as subsisting in regard to the property. McCoy had then possession of the tract of eighty acres to which the first lease applied, and also of the machinery and other assets of the old firm. In July, 1890, the lessors of the property, Messrs. Clark, Cochran, and Phelps, proposed to McCoy that if he would surrender one half of the firm tract, they would make a new lease for another term of ten years for the remaining half. This proposition McCoy accepted. He then took a new lease in his own name. Afterwards valuable mineral developments were made on the land, so that the share due the Bell & McCoy partnership estate was found by the trial court to be $2,781.50 at the time of the decree on the circuit.

The trial court found that the firm was the equitable owner of the lease to McCoy of date, July 20, 1890, and gave judgment for the profits arising therefrom. It was also adjudged that plaintiff, as administratrix of the firm estate, was entitled to possession of the said leasehold for the purpose of administration of the partnership assets of Bell and McCoy,

Defendant appealed, December 28, 1893, from the finding and judgment after the ordinary preliminary

motion and exceptions. Plaintiffs also appealed, at a later day of the same term; but only the defendant filed a transcript or any record in the supreme court.

1. It is claimed by defendant that the trial court erred in holding that the Clark & Co. lease of 1890 was part of the firm assets of Bell and McCoy because that lease was not mentioned in the petition. The plaintiffs' pleading counts upon the facts of the original partnership relation, the interest of the firm in the first lease, and asks an accounting of all the partnership dealings, and general relief.

The answer set up fully the last lease, claiming it as the exclusive property of McCoy; which claim plaintiffs denied by the reply.

No objection was made to the lease when offered by plaintiffs, nor was any objection of want of conformity of the evidence to the allegations suggested at the trial. Any objection now interposed to the state of the pleadings, which could have been obviated by an amendment of the pleadings on the circuit, ought to be ignored if it was not first submitted there. We have sought to find somewhere in the record of the circuit hearing any intimation of such an objection, but as we have found none we pass by the assignment of error on this point without further comment than that we regard the objection as unavailing. R. S. 1889, sec. 2302.

2. McCoy had possession of the leasehold property of the old firm, and upon surrender of one half of it, secured a new lease to himself (for a long period) to the remaining one half of the original tract. Defendant argues that McCoy had the right to thus acquire the leasehold title to the old firm property. We do not agree to that contention. So long as the firm affairs were not wound up, McCoy was bound to account in equity for his management of its property.

He could not dispose of the firm property without being obliged to account for any profit he might thereby secure for himself. He expressly recognized his relation to the property as a partner, even after the death of Bell. He could not equitably be thereafter permitted to change the firm title into his individual title, except under the obligation to account for advantages thereby gained, and for which his estate has been called upon to respond in the suit at bar. Had he desired he might have taken steps to wind up the partnership affairs and sever the interests of the partners. But while he retained the partnership assets, and continued to prosecute the firm's enterprise, he could not escape the liability to account for his partner's share of any profits secured through the means which the firm's resources placed at his command.

A claim is advanced in argument that Bell had failed to comply with his agreement to furnish funds for the firm's operations, and that he in effect abandoned the partnership and its assets to his partner before his (Bell's) death. But the learned trial court evidently found against that claim by declaring that the partnership existed at the time of Bell's death, and that the firm then owned the leasehold first above mentioned. The evidence fully sustains those findings.

The original lease was never forfeited by any of the landlords. The exchange for a new lease (covering half of the original holding) was the result of negotiations between one of the landlords and McCoy, in which the latter was informed that, as to half the land, the Hilliard lease was probably not valid for want of due authority to charge the Brewster estate. When McCoy took the new lease the old one was in force, and its surrender certainly formed at least part of the consideration for the new lease to him alone.

In such circumstances we consider that the estate of McCoy was answerable for the profits of the new lease and that the property it embraced was equitably that of the firm of Bell and McCoy.

3. Until there is a liquidation of the partnership estate, the realty of the firm may be dealt with, and managed, by the administrator of the partnership estate just as any other asset of the firm. Plaintiff Mrs. Bell, as administratrix of that estate in this case, is entitled to the possession and control of the leasehold, and it is not material whether it is regarded as real or personal in nature, so far as concerns the present controversy.

4. The plaintiffs insist that they are entitled on this appeal to open up the question of the correctness of the trial court's ruling sustaining the demurrer of the defendants who were discharged from the case as improperly joined. But the plaintiffs did not file any transcript on appeal, and hence must be held to have abandoned the same. The act of 1895 (Laws, 1895, p. 94) does not apply to the case at bar which had been long pending and in which the appeal had been already allowed. R. S. 1889, secs. 6596, 6598; *Risley v. St. Louis* (1864), 34 Mo. 404.

If certain defendants (who were let out of the suit on the demurrers) were essential parties to the judgment reached, a different question from that before us might require to be met. But as the case stands, the defendant in court is in possession of the partnership property, and the judgment as rendered is in conformity to law. It is affirmed. BRACE, C. J., and MACFARLANE, J., concur. ROBINSON, J., does not take part.